UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDDIE LATESE WOMACK,

        Petitioner,

v.                                                                    Civil Case No. 07-10519
                                                                     Honorable Patrick J. Duggan
THOMAS BELL,

        Respondent

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Freddie Latese Womack ("Petitioner"), presently confined at the Macomb Correctional Facility in New Haven, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is challenging his convictions following a jury trial in January 2004, for first-degree felony murder, first-degree home invasion, felon in possession of a firearm, possession of a firearm in the commission of a felony, and being a third felony habitual offender. For the reasons that follow, the Court denies Petitioner's request for habeas relief.

### I. Factual and Procedural Background

Petitioner's convictions arise from an incident that began the evening of December 30, 2002, when Petitioner was told by his girlfriend's juvenile daughter, Brittany, that Carlton Torres, Sr. ("Torres") had sexually molested her. Petitioner became "agitated" after learning this information and punched Torres, who was at the home of Petitioner's

girlfriend, Lula Smith ("Smith"), dropping off Brittany and some other kids following a birthday party. Petitioner pulled a handgun and pointed it at Torres' face, warning Torres, "If you touch her again I'm going to put one in you." (1/7/04 Trial Tr. at 30, 32, 169-70.) Torres and another man then left Smith's house and Torres went home.

When Torres got home, he went upstairs to his bedroom and sat on his bed, facing away from the door. He then made some phone calls. Torres' son, who stood in the doorway of the room while his father was on the phone, testified at Petitioner's trial that Torres was holding a sword while he made the calls.

In the meantime, Petitioner went to someone's home to obtain a shotgun and then proceeded to Torres' home. He was dropped off on the street behind Torres' house and then ran into the house and up the stairs. Torres' son heard someone running up the stairs and turned around to see Petitioner holding a rifle or shotgun and a handgun. Torres' son tried to push Petitioner and grabbed him by the shoulder. As he was doing so, Petitioner shot at Torres and then ran out of the house. Torres died at the scene from a bullet that entered just below his left armpit on his back.

A warrant for Petitioner's arrest was issued on January 15, 2003. The investigator in charge of the case made numerous repeated attempts to locate and contact Petitioner, without success. Eventually, in March 2003, the investigator had Petitioner featured on the television program "Michigan's Most Wanted," in an attempt to find him.

On April 6, 2003, Petitioner turned himself in at a Detroit Police Department station. After being advised of his constitutional rights, Petitioner gave a statement to the

police. According to Petitioner's statement, he learned that Torres had sexually molested Brittany and other girls in the family in the past. He stated that he became angry and punched Torres in the mouth, warning Torres that he better not hear that Torres touched the child. Petitioner informed the police that Brittany then told him that Torres had been sexually molesting her for a while, but she had been too scared to say anything.

Petitioner told the police that, after speaking with Brittany, he left Smith's house and went to find a ride to Torres' home. He could not find one and so he returned to Smith's home, at which time Smith told him to go to Torres' house because Chanel Hicks (Smith's sister and the daughter of Torres' girlfriend) had hit Torres in the head with bottles and an iron. Petitioner stated that he paid someone for a ride to Torres house, but that he first stopped to get a shotgun. After being dropped off behind Torres' house, Petitioner entered the house with the shotgun in his hand and proceeded upstairs.

According to Petitioner's statement to the police, once he got upstairs, he pushed Torres' son out of the way and hit Torres in the face. Petitioner indicated that Torres had a .38 revolver, which Petitioner tried to grab. Petitioner stated that while the two men were fighting for the gun, it discharged.

A jury found Petitioner guilty of the previously listed offenses, as well as second-degree murder, on January 15, 2004. The state trial court vacated the second-degree murder conviction and sentenced Petitioner on January 29, 2004. Petitioner's convictions and sentence were affirmed on direct appeal. *People v. Womack*, No. 254007, 2005 WL 1185560 (Mich. Ct. App. May 19, 2005) (unpublished opinion). The Michigan Supreme

Court denied Petitioner's subsequent application for leave to appeal on November 29,

2005. *People v. Womack*, 474 Mich. 938, 706 N.W.2d 27 (2005).

On February 2, 2007, Petitioner filed the pending application for habeas relief.

Petitioner thereafter moved to hold his petition in abeyance in order to complete post-

conviction proceedings in the state courts and exhaust additional claims that he failed to

raise in previous state court proceedings. This Court granted the motion and the case was

stayed from March 17, 2008 until August 12, 2010. In the meantime, Petitioner filed a

post-conviction motion for relief from judgment in the state trial court, which the court

denied. *People v. Womack*, No. 03-005553-01 (Wayne Cnty. Cir. Ct. May 30, 2008).

The Michigan appellate courts denied Petitioner leave to appeal. *People v. Womack*, No.

290293 (Mich. Ct. App. July 16, 2009); *lv. denied*, 485 Mich. 1123, 779 N.W.2d 505

(2010).

At Petitioner's request, this Court lifted the stay in these habeas proceedings on

August 12, 2010. On the same date, the Court also granted Petitioner's motion to file a

supplemental petition. Based on his original and supplemental petitions, Petitioner raises

the following grounds for habeas relief:

> I.     Petitioner was denied his right to a properly instructed jury and his
>        right to a defense by the trial court's erroneous instructions on
>        accident, depriving him of due process under the United States
>        Constitution and Michigan Constitution.
>
> II.    The prosecution denied Petitioner a fair trial by shifting the burden
>        of proof, adversely commenting on evidence that was not presented,
>        and commenting to the jury that the death penalty is not allowed in
>        Michigan, depriving him of due process under the United States

4

Constitution and Michigan Constitution.

III.  Petitioner was denied a fair trial by the erroneous admission
      testimony that he was featured on a television show called
      "Michigan's Most Wanted," depriving him of due process under the
      United States Constitution and Michigan Constitution.

IV.   The trial court's restrictions on the presentation and exploration of
      evidence in support of the defense theory of provocation fatally
      infringed Petitioner's right to present a defense, and to a fair trial,
      depriving him of due process under the United States Constitution
      and Michigan Constitution.

V.    Petitioner was deprived of his constitutional rights to due process
      and fair trial where the trial court failed to provide the jurors with the
      defense cross-examination of Carlton Torres, Jr., who testified that
      the weapon discharged accidentally, thus depriving Petitioner of his
      constitutional right to present a complete defense.

VI.   Petitioner was deprived of his constitutional right to due process and
      a fair trial where the trial court erroneously instructed the jurors that
      they could reach a verdict of not guilty on both counts of first-degree
      murder, then turn to consider the lesser included offenses for a
      verdict of guilty, then return back to the first-degree murder counts
      for a verdict of guilty; also, Petitioner was deprived of his right to
      due process and a fair trial where the trial court erred in vacating
      Petitioner's second-degree murder charge when the proper charge to
      vacate was the first-degree felony murder charge, because the jury
      found Petitioner guilty of second-degree murder first.

VII.  Petitioner was denied the effective assistance of counsel in violation
      of his Sixth Amendment rights when trial counsel failed to object to
      an uncertain jury verdict; trial counsel failed to object when the trial
      court failed to provide the jury with Carlton Torres, Jr.'s cross-
      examination testimony; and when trial counsel who was also court-
      appointed appellate counsel failed to raise claims during Petitioner's
      direct appeal.

Respondent filed answers to the original and supplemental petition, arguing that

Petitioner's claims are procedurally defaulted and/or lack merit.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standard of review for federal habeas proceedings:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. 2254(d). In short, under §2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848, 1852-53 (2003).

The Supreme Court has provided that under the "contrary to" clause "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 364-65, 120 S. Ct. 1495, 1498 (2000). A federal habeas court may grant the claim under the "unreasonable application" clause "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* "[A]

federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable." *Id.* at 409, 120 S. Ct. at 1521. The court may not issue a writ "simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S. Ct. at 1522.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, – U.S. – , 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7, 117 S. Ct. 2059, 2067 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, – U.S. – , 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149 (2004)). Therefore, in order to obtain federal habeas relief, a state prisoner must show that the state court's denial of her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

Respondent contends that some of Petitioner's claims are barred by the doctrine of

procedural default.  This doctrine provides:

> In all cases in which a state prisoner has defaulted his federal
> claims in state court pursuant to an independent and adequate
> state procedural rule, federal habeas review of the claims is
> barred unless the prisoner can demonstrate cause for the
> default, and actual prejudice as a result of the alleged
> violation of federal law, or demonstrate that failure to
> consider the claims will result in a fundamental miscarriage of
> justice.

*Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991).  For the doctrine

to apply, a firmly established state procedural rule applicable to the petitioner's claim

must exist and the petitioner must have failed to comply with that state procedural rule.

*Warner v United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992).  Additionally, the last

state court from which the petitioner sought review must have invoked the state

procedural rule as a basis for its decision to reject review of the petitioner's federal claim.

*Coleman*, 501 U.S. at 727-30, 111 S. Ct. at 2553-54.  If the last state court from which the

petitioner sought review affirmed the conviction both on the merits and, alternatively, on

a procedural ground, the procedural default bar is invoked.  *Rust v. Zent*, 17 F.3d 155, 161

(6th Cir. 1994).  If the last state court judgment contains no reasoning, but simply affirms

the conviction in a standard order, the federal habeas court must look to the last reasoned

state court judgment rejecting the federal claim and apply a presumption that later

unexplained orders upholding the judgment or rejecting the claim rested upon the same

ground.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594 (1991).

   Procedural default, however, is not a jurisdictional bar to review of a habeas

petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89, 118 S. Ct. 478, 480 (1997).

Additionally, "federal courts are not required to address a procedural-default issue before

deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th

Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S. Ct. 1517 (1997)).

Judicial economy might counsel resolving the merits of the petitioner's claims when doing

so is easier than addressing the procedural default issue. *Lambrix*, 520 U.S. at 525, 117 S.

Ct. at 1523. The Court believes that this is the case here, particularly as Petitioner asserts

ineffective assistance of counsel as cause for raising the alleged defaulted issues.

### III. Analysis

### A. Petitioner's Claims Alleging Error in the Jury Instructions

In his first ground for relief, Petitioner claims the trial court erred in refusing to

instruct the jury that an accidental shooting is a defense to voluntary manslaughter. The

Michigan Court of Appeals rejected Petitioner's claim, reasoning:

> We agree that the trial court erred in denying the requested instruction.
> *People v. Hess*, 214 Mich. App 33, 38; 543 NW2d 332 (1995). But this case
> is distinguishable from *Hess*, because defendant was not convicted here of
> voluntary manslaughter, but rather of two forms of murder and the jury was
> instructed that accident was a defense to each theory of murder.
> Specifically, the jury was instructed that the killing was not murder if the
> gun went off accidentally.
>
> The omitted accident instruction is properly classified as a nonconstitutional
> error. *People v. Hawthorne*, 265 Mich. App 47, 53 n 3; 692 NW2d 879
> (2005). Applying the standard for preserved, nonconstitutional error, we
> hold that reversal is not warranted because it is not more probable than not
> that the instructional error was outcome determinative. *People v. Cornell*,
> 466 Mich. 335, 363-364; 646 NW2d 127 (2002); cf. *People v. Morris*, 139
> Mich. App 550; 362 NW2d 830 (1984). Rather, the jury necessarily rejected

> defendant's accident theory by finding him guilty of first-degree felony
> murder and second-degree murder, notwithstanding the trial court's
> instructions that accident was a defense to these offenses.

*Womack*, 2005 WL 1185560, at *1. The Michigan court's rejection of Petitioner's claim

was reasonable.

An erroneous instruction only supports a collateral attack upon the constitutional

validity of a state court conviction where the ailing instruction so infected the entire trial

that the resulting conviction violates due process. *Henderson v. Kibbee*, 431 U.S. 145,

154-55, 97 S. Ct. 1730, 1737 (1977). In *Henderson*, the Supreme Court stressed that

"[t]he question in such a collateral proceeding is 'whether the ailing instruction by itself

so infected the entire trial that the resulting conviction violates due process.'" *Id*. at 154,

97 S. Ct. at 1737 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct. 396, 400

(1973)). The Sixth Circuit has held that "[g]enerally, a defendant is entitled to jury

instructions on defense theories that are supported by law and raised by the evidence

presented." *Williams v. Kentucky*, Nos. 95-5928, 95-5988, 1997 WL 561369, at *8 (6th

Cir. Sept. 9, 1997) (unpublished opinion). A requested instructed must be supported by

sufficient evidence. *Mattews v. United States*, 485 U.S. 58, 63, 108 S. Ct. 883, 887

(1988).

In Petitioner's case, the jury was instructed that accident is a defense to the first-

degree felony and premeditated murder charges and to the lesser included offense of

second-degree murder. Had the jury believed the shooting was accidental, they would

have acquitted Petitioner of the murder charges. By finding him guilty of first-degree

felony murder and second-degree murder, the jury clearly rejected Petitioner's accident defense. Therefore, the failure to instruct the jurors that accident was a defense to the lesser included offense of voluntary manslaughter was not prejudicial. Accordingly, Petitioner is not entitled to habeas relief based on his first claim.

As part of his sixth claim, Petitioner contends that the trial judge's following instruction was erroneous:

> In this case, there are several different crimes that you may consider. When you discuss the case, you must discuss the crimes of first degree murder and felony murder first. If you all agree that Defendant is guilty of that crime, you may stop your discussions on those charges and return your verdict on those.
>
> If you believe that the Defendant is not guilty of first degree and/or felony murder, of if you cannot agree about those crimes, you should consider the less serious crimes of second degree murder, voluntary manslaughter, involuntary manslaughter. You decide how long to spend on first degree murder and felony murder before discussing the less serious charges.
>
> You can go back to first degree murder and felony murder after discussing the less serious charges.

(1/14/04 Trial Tr. at 30-31). Petitioner claims that this instruction led to a Double Jeopardy violation because it confused the jurors and caused them to convict him of first- and second-degree murder. Petitioner further claims that the instruction took away the jurors' ability to be lenient. Although acknowledging that Michigan law permits judges to instruct jurors on the order of consideration with respect to greater and lesser offenses, Petitioner contends that it is impermissible to instruct jurors to return to consider a principal charge after voting to convict the defendant of a lesser offense.

Petitioner is not entitled to habeas relief on his claim.  As an initial matter, Petitioner incorrectly conflates first-degree premeditated and felony murder.  Further, the trial court did not instruct the jury that it could consider first-degree murder after voting to convict Petitioner of a lesser offense.  Rather, the court instructed the jury that it could "go back to first degree murder and felony murder after *discussing* the less serious charges."  (*Id.*, emphasis added.)  An identical jury instruction concerning the order of deliberations was upheld as constitutional by the Sixth Circuit, on the grounds that the instruction accurately reflected Michigan law with respect to the order of deliberations.  *See Casnave v. Lavigne*, 169 F. App'x 435, 445 (6th Cir.) (citing *People v. Handley*, 415 Mich. 356, 329 N.W.2d 710, 712 (1982)), *cert. denied*, 547 U.S. 1099, 126 S. Ct. 1883 (2006).

## B.  Petitioner's Prosecutorial Misconduct Claims

In his second claim, Petitioner alleges that he was deprived of a fair trial as a result of prosecutorial misconduct.

"When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940, 947 (1982)).  The habeas court's role is to determine whether the prosecutor's conduct was "'so egregious so as to render the entire trial fundamentally unfair.'"  *Id.* (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir.), cert. denied, 444 U.S. 936, 100 S. Ct. 286, 62 L.Ed.2d 196 (1979)).  The first step in

analyzing a prosecutorial misconduct claim is deciding whether the challenged conduct was improper. *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). If the conduct was improper, the court must determine whether the statements or remarks were so flagrant as to constitute a denial of due process and warrant granting a writ. *Id*. The following factors are relevant to evaluating whether the conduct was flagrant:

> 1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused.

*Id*. (quoting *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir.1999)).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing in prosecutorial misconduct cases is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645, 94 S. Ct. 1868, 1872 (1974)).

Petitioner first contends that the prosecutor improperly referred to possible penalties in closing argument when she mentioned that the State of Michigan does not have a death penalty. The Michigan Court of Appeals rejected Petitioner's claim finding that, when examined in context, the prosecutor's argument was not directed at the possible penalty for Petitioner, but instead as an attempt to portray Petitioner as a person who took

13

the law into his own hands by executing Torres for his crimes against Brittany. *Womack*, 2005 WL 1185560, at *2. The Michigan Court of Appeals further ruled that any prejudice was cured by the trial court's cautionary instruction that the jury was not to consider the possible penalty. *Id*.

When a jury has no sentencing function, as was the case at Petitioner's trial, it should "reach its verdict without regard to what sentence might be imposed." *See Shannon v. United States*, 512 U.S. 573, 579, 114 S. Ct. 2419, 2424 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40, 95 S. Ct. 2091, 2095 (1975)). In the present case, however, the prosecutor's comments were not made in reference to the possible penalty that might or might not be imposed upon Petitioner if he was convicted. Instead, in her comments, the prosecutor characterized Petitioner's crime as an unjust imposition of the death penalty on Torres for sexually molesting Brittany. The State court also was correct in finding that any misconduct was cured by the trial court's immediate instruction to the jury that they should not consider possible penalties in reaching a verdict.

Petitioner next contends that the prosecutor improperly shifted the burden of proof by arguing that Petitioner failed to show that Torres sexually assaulted Brittany. As the State court reasoned, in context, the prosecutor's comments did not suggest that Petitioner had to prove anything at his criminal trial. In any event, the prosecutor's argument did not deprive Petitioner of a fair trial because any prejudice possibly resulting from the comment was cured by the trial court's instructions regarding the burden of proof. (1/14/04 Trial Tr. at 7.)

For these reasons, Petitioner is not entitled to habeas relief based on his second ground for relief.

## C. Petitioner's Claim Based on "Michigan's Most Wanted"

In his third claim for relief, Petitioner contends that he was denied a fair trial as a result of the introduction of testimony at his trial that he was profiled on "Michigan's Most Wanted." The Michigan Court of Appeals rejected Petitioner's claim, reasoning:

> The trial court did not abuse its discretion in allowing testimony that defendant appeared on "Michigan's Most Wanted." Defendant's act of fleeing after the shooting was admissible evidence of flight because it supports an inference of "consciousness of guilt." *People v. Goodin*, 257 Mich. App 425, 432; 668 NW2d 392 (2003). Although defendant being featured on "Michigan's Most Wanted" did not by itself have a tendency to support an inference that defendant hid during the three-month period after the offense, it was part of the search that closely preceded defendant's conduct of turning himself in to the police. Thus, the evidence was relevant, and the prejudicial effect of evidence is best determined by the trial court's contemporaneous assessment of the presentation, credibility and effect of the testimony. *Bahoda*, supra at 291. Here, we cannot conclude that the trial court abused its discretion in allowing evidence that a police investigator used "Michigan's Most Wanted" to attempt to locate defendant.

2005 WL 1185560, at *3.

Violations of state law and procedure that do not infringe specific federal constitutional protections are not cognizable under § 2254. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct 475, 480 (1991). "Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988)).

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and prejudicial evidence cannot form the basis for habeas relief because it involves a state law evidentiary issue. Petitioner therefore is not entitled to habeas relief on his third claim.

### D.  Petitioner's Claim that He Was Denied the Right to Present a Defense

In his fourth ground in support of his request for habeas relief, Petitioner alleges that he was deprived of his right to present a defense and to a fair trial when the trial judge excluded statements Brittany and another child made before the shooting in Petitioner's presence, accusing Torres of sexually molesting them. Petitioner argues that the evidence would have supported his claim that he was provoked into shooting the victim, which would have reduced the charge to voluntary manslaughter.

"Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 1923 (1967); *see also Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986). A defendant does not have an unfettered right to offer evidence, however, and a judge can curtail the admission of evidence "if there is a good reason for doing that." *Clark v. Arizona*, 548 U.S. 735, 770, 126 S. Ct. 2709, 2731 (2006). As the *Clark* Court summarized:

> "While the Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of

the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326, 126 S. Ct. 1727, 1732, 164 L.Ed.2d 503 (2006); see *Crane v. Kentucky*, 476 U.S. 683, 689–690, 106 S. Ct. 2142, 90 L.Ed.2d 636 (1986) (permitting exclusion of evidence that "poses an undue risk of 'harassment, prejudice, [or] confusion of the issues'" (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L.Ed.2d 674 (1986))); *see also Egelhoff*, 518 U.S. 37, 116 S. Ct. 2013, 135 L.Ed.2d 361; *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

*Id.*, 126 S. Ct. 2731-32.  Moreover, under the standard of review enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the decision was "an objectively unreasonable application of clearly established Supreme Court precedent." *Rockwell v. Yukins*, 341 F.3d 507, 511-12 (6th Cir. 2003).

The Michigan Court of Appeals rejected Petitioner's claim, in part, because the excluded statements were cumulative of evidence presented through the testimony of other witnesses and Petitioner's statement to the police.  In addition to the evidence referred to by the Michigan court in its decision affirming Petitioner's conviction, *see* 2005 WL 1185560, at *4-5, Torres' son testified that Petitioner was present when Brittany told Petitioner's girlfriend that Torres had sexually molested her.  (1/7/04 Trial Tr. at 104-08.)  During his testimony, Torres' son also admitted that he told the police that Chanel Hicks confronted Torres with a knife and accused him of raping Brittany.  Further, in his statement to the police, Petitioner indicated that Brittany told him that Torres had sexually molested her for some time and this angered Petitioner.

17

Based on the above, the trial court's exclusion of additional testimony regarding Petitioner's awareness prior to the shooting of Torres' molestation of Brittany and other individuals was not so egregious that it effectively denied Petitioner a fair trial. *See Fleming v. Metrish*, 556 F.3d 520, 535-36 (6th Cir. 2009); *see also Perkins v. McKee*, 411 F. App'x 822, 826 (6th Cir. 2011) (finding that the state court's exclusion of a defense witness as a sanction for a discovery order violation did not deprive the petitioner of his right to present a defense, when the excluded witness' testimony was cumulative of evidence presented at trial). In light of the evidence presented on the subject, Petitioner was afforded a "meaningful opportunity to present a complete defense." Therefore, Petitioner is not entitled to habeas relief based on his fourth claim.

### E. Petitioner's Claim Relating to Trial Transcripts

In his fifth claim for relief, Petitioner argues that the he was denied a fair trial when the trial court failed to provide the jury with the transcript of defense counsel's cross-examination of Torres' son. Toward the end of the day on January 14, 2004, the first day of the jury's deliberations, the jury requested a transcript of this portion of Torres' son's trial testimony; however, a transcript was not readily available. The trial court judge advised the jurors that an audio recording of the testimony would be provided the following day, but in the meantime, they should rely on their collective memories for the remaining time that they would be allowed to deliberate that day (approximately twenty minutes). (1/14/04 Trial Tr. at 46.) However, before the audio recording was furnished to the jurors the following day, they reached a verdict.

18

There is no federal constitutional law requiring that a jury be provided with the transcripts of a witness' trial testimony. *See Bradley v. Birkett*, 192 F. App'x 468, 477 (6th Cir. 2006). Given the lack of federal law on the subject, the state trial court's rejection of Petitioner's claim on post-conviction review was not an unreasonable application of clearly established federal law. Petitioner therefore is not entitled to habeas relief based on this fifth claim.

## F.  Petitioner's Improper Verdict Claim

As part of his sixth ground for relief, Petitioner contends the trial court violated his constitutional rights by vacating his second-degree murder conviction at sentencing rather than his first-degree felony murder conviction.

Petitioner was charged with first-degree premeditated murder and first-degree felony murder. The jury found him guilty of the lesser included offense of second-degree murder with respect to the premeditated murder charge and guilty as charged of first-degree felony murder. While it would violate the Double Jeopardy Clause to uphold both convictions arising from the death of a single victim, the trial court remedied the violation by vacating one of the convictions. Reviewing a similar scenario, the Sixth Circuit has held that the petitioner received all the relief to which he was entitled. *See Tiggart v. Robinson* 36 F. App'x 750, 751 (6th Cir. 2002).

Petitioner therefore is not entitled to relief based on this claim.

## G.  Petitioner's Ineffective Assistance of Counsel Claims

In his seventh ground in support of his request for habeas relief, Petitioner claims

that he was denied the effective assistance of trial and appellate counsel.  Specifically,

Petitioner contends that his trial counsel was ineffective by failing to object to (1) the trial

court's instruction to the jury concerning the order of deliberations and (2) the court's

failure to provide the jury with the cross-examination testimony of Torres' son; and that

his appellate counsel was ineffective for failing to assert his fifth through seventh claims

on direct appeal.

To show that he was denied the effective assistance of counsel under federal

constitutional standards, Petitioner must satisfy a two prong test.  First, he must

demonstrate that, considering all of the circumstances, counsel's performance was so

deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth

Amendment.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).

Second, Petitioner must show that such performance prejudiced his defense.  *Id*. at 689,

104 S. Ct. at 2065.  To demonstrate prejudice, Petitioner must show that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.  *Id*. at 694,

104 S. Ct. at 2068.

This Court already has determined that the trial court's instruction to the jury

concerning the order of deliberations was adequate and failure to provide the jury with the

cross-examination testimony of Torres' son was not unconstitutional.  As such, Petitioner

cannot show that his trial counsel was ineffective for failing to object.  The Court in fact

has determined that all of Petitioner's claims in support of his request for habeas relief

lack merit.  As such, Petitioner is unable to show that his appellate counsel was

ineffective in failing to raise any of these claims on direct appeal.

For these reasons, Petitioner is not entitled to habeas relief based on his seventh claim.

## IV.  Conclusion and Certificate of Appealability

In conclusion, the grounds Petitioner asserts in support of his request for habeas relief lack merit.  Therefore, Petitioner is not entitled to a writ of habeas corpus.

To the extent Petitioner intends to appeal this Court's decision, he must first obtain a certificate of appealability.  28 U.S.C. § 2253(c)(1)(A).  Section 2253 provides that a certificate of appealability may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a district court denies a habeas petition on the merits of the claims presented, a certificate may issue if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000).  For the reasons stated in the preceding section, the Court finds that Petitioner has failed to make this showing.  Therefore, the Court declines to issue a certificate of appealability in this case.

Accordingly,

**IT IS ORDERED**, that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**;

**IT IS FURTHER ORDERED**, that a certificate of appealability shall not issue in this case.

Date:  April 13, 2012                                s/PATRICK J. DUGGAN
                                                     UNITED STATES DISTRICT JUDGE


Copies to:
Freddie Latese Womack
#345245
Macomb Correctional Facility
34625 26 Mile Rd.
New Haven, MI 48048

AAG Raina I. Korbakis